[Robbins v. Webb.]

| 68 | 393 |
| 94 | 596 |
| 68 | 393 |
| 112 | 304 |
| 113 | 463 |

# Robbins *v.* Webb.

*Bill in Equity to enjoin a Use of Lands in Violation of a Covenant running therewith.*

1. *Contracts in restraint of trade; when valid.*—Contracts restraining the exercise of any trade, profession or business, are legal, when they are confined to a limited locality, not unreasonably large or extensive, and there is a fair and reasonable ground for the restriction.

2. *When covenant as to use of land valid.*—Where the owner and proprietor of a public warehouse on a navigable river, conveys a tract of land adjoining tha◆ on which his warehouse is situated, taking from the purchaser a penal bond containing a covenant not to allow or permit a warehouse or place for shipping or receiving goods upon the conveyed premises, such covenant is not void as against public policy.

3. *Covenant by purchaser as to use of lands; when it runs with the land.* A covenant by a purchaser of lands, contained in a penal bond executed contemporaneously with the delivery of the deed to him by the vendor, by which he binds himself, his personal representative and assigns, "not directly or indirectly to permit or allow a warehouse or place for the shipping or receiving of goods either upon or through said premises," runs with the land, and may be enforced by the covenatee, his personal representative, heirs or assigns against the covenantor, his heirs, and purchasers with notice of the covenant.

4. *Same; jurisdiction of a court of equity to enforce.*—A court of equity will, on a bill filed by the heirs of the covenantee against a purchaser from the covenantor, with notice, restrain by injunction a breach of the terms of such a covenant, asserting jurisdiction by an equity in the nature of specific performance.

5. *When true dates of written instruments may be shown by parol.*— Where two instruments relate in part to the same subject matter, being operative only from the date of delivery, parol evidence, for the purpose of connecting them together, is admissible to show the true date upon which they were executed, although such date may differ from the dates appearing on the face of the instruments themselves.

6. *When two instruments construed as parts of the same transaction.*— G. sold a tract of land to M. upon the condition that he and S. would execute to G. a bond binding themselves "not directly or indirectly to permit or allow a warehouse or place for the shipping or receiving of goods either upon or through a designated part of the premises. The bond was signed by M. and S., bearing date February 19th 1859. At the request of M. a deed was executed by G. conveying the land to S. bearing date February 26, 1859. Both the bond and deed were delivered on the last named date. *Held*, that the two instruments must be construed together as parts of the same transaction, although no reference is made in the deed to the bond, and the bond recites that M. had "bought" the land.

7. *Same; when parol evidence admissible.*—In such case parol evidence is admissible to show all the facts and circumstances, not inconsistent with the two instruments, surrounding the main fact, which was the sale, and connected, or contemporaneous with, or in any manner throwing light upon it; and it is not necessary, in order to make these facts and circumstances contemporaneous with the sale, within the meaning of the law, that they should have occurred or been performed on the same day.

[Robbins v. Webb.]

APPEAL from Wilcox Chancery Court.

Heard before Hon. CHARLES TURNER.

The bill in this cause was filed, October 30th, 1879, by Sarah S. Robbins and others, the appellants, against W. H. Webb, the appellee ; and its material averments may be summarized as follows : In February, 1859, Robert H. Gregg was seized and possessed of a tract of land lying on the Alabama river, in Wilcox county, on which he had a public landing, known as the "Lower Peach Tree Landing," and was engaged in the warehouse business, receiving and shipping merchandise and other commodities. About that time one Alexander McLeod applied to him to purchase another tract which was owned by him, and which adjoined the tract where the landing was situated, and a part of which also bordered on the river ; but he having been informed that McLeod and one Thomas C. Smith intended to erect a public warehouse, and to establish a public landing on the tract which McLeod desired to purchase, and knowing that such a warehouse and landing would greatly injure the value, and decrease the income of his warehouse and landing at Lower Peach Tree, refused to sell to McLeod, unless the latter would give him a written obligation binding him and Smith not to permit or allow any warehouse or place for shipping or receiving goods on a designated part of the land which McLeod desired to purchase. McLeod acceded to this, and the trade was made with the understanding that such an obligation was to be executed. Afterwards, and before the trade was consummated, McLeod, in the presence of Smith, stated to Gregg that he was purchasing for Smith, and requested the deed to be made directly to the latter, which was accordingly done. This deed is made an exhibit to the bill, is signed by Gregg and wife, is dated, February 26th, 1859, and conveys the land to Smith in fee simple, without any limitations or conditions, and with covenants of warranty. In the deed no reference is made to any obligation or bond executed, or to be executed by Smith and McLeod, or either of them. The bill also avers the execution of a bond by Smith and McLeod, which is also made an exhibit thereto. This bond is signed by Smith and McLeod, is dated February 19, 1859, is in the penal sum of five thousand dollars, to be paid to Gregg, and its condition is as follows : "The condition of this obligation is this, that on this day and date, above written, the said Alexander McLeod has bought of said Robert H. Gregg one certain lot of land lying and being on the Alabama river," particularly described, and being part of the land conveyed by the deed, "they having agreed with the said Gregg, that they will not themselves, nor by their ex-

[Robbins v. Webb.]

ecutors, administrators or assigns, directly or indirectly, ever permit or allow any warehouse or place for the shipping or receiving of goods either upon or through said premises, and that they will always allow said Robert H. Gregg fully and unmolestedly to use said premises for the delivery of spars and lumber; now, if the said McLeod and Smith, their executors, administrators and assigns do well and truly observe these conditions, this obligation shall be null and void, otherwise to be of full force and virtue." It is not averred in the original bill when the bond was delivered, but it is alleged that the bond and deed constituted one and the same transaction; and that Smith had knowledge of, and assented to all that McLeod did in and about the trade.

Gregg died intestate in 1862, and the appellants are his only heirs at law, and, as such, the owners of the Lower Peach Tree warehouse, landing and property. In 1878, the appellee purchased from Smith the land conveyed by Gregg, with full knowledge of the bond, its terms and conditions; and in 1879, he caused to be erected on the land described in the bond a public warehouse, and was, at the time of the filing of the bill, and had been for two months prior thereto, shipping and receiving goods, cotton and freights of all kinds upon and through said premises, in violation of the covenant in the bond, thereby damaging the appellants in their Lower Peach Tree property. McLeod died before the filing of the bill, leaving no estate, and the insolvency of both Smith and McLeod is averred. The prayer of the bill is for an injunction, restraining the appellee from the further prosecution of the warehouse business, and from shipping or receiving goods either upon or through said land.

To the bill the appellee interposed a demurrer, assigning, among other grounds, that the bond and deed have different dates, did not refer the one to the other and were separate and distinct transactions, and could not be connected by parol evidence; that the covenant in the bond was without consideration as to Smith and was not binding on him or the appellee, as his vendee; and that the covenant was void as against public policy. The chancellor sustained the demurrer, without prejudice, however, to an injunction which had been issued on the filing of the bill, provided the appellants should within thirty days present and have allowed such an amendment to the bill as should meet the objections raised by the demurrer and sustained in his opinion. Within the time prescribed by the decree, the appellants presented to the register for allowance an amendment to the bill, alleging, in substance, that the contract of sale between Gregg and McLeod was not consummated in one day, but that negotiations in reference

[Robbins v. Webb.]

thereto were pending several days ; that at an early stage in the negotiations, and before he had been requested to execute the deed to Smith, Gregg had the bond prepared in order to carry out his "determination not to permit a warehouse or public landing to be erected on said land", and that afterwards no change was made in its terms or recitals; that although the bond and deed bear different dates, they were in fact signed, executed and delivered on the same day, to-wit : on February 26th, 1859, and as parts of the same transaction. To the allowance of the amendment the appellee objected, because it did not meet the objections raised by the demurrer to the original bill, and did not, for this reason, comply with the decree of the court. The register overruled the appellee's objections, and allowed the amendment, from which ruling he appealed to the chancellor. On the hearing of the appeal, the ruling of the register was reversed, the order allowing the amendment set aside, and a decree entered dissolving the injunction and dismissing the bill. That decree is here assigned as error.

S. J. CUMMINGS, for appellants. (1). If a trade was going on for a day, a week, or a month, all writings between the parties during that time, concerning the transaction, would be "contemporaneous." It is not, therefore, a violation of the rule to allow proof that the transaction continued for several days, and that both the bond and the conveyance were executed during the trade or transaction, and each constituted a part thereof.—*Sewall v. Henry*, 9 Ala. 24; *Whitehurst v. Boyd*, 8 Ala. 375 ; *Holman v. Crane*, 16 Ala. p. 570, and authorities cited ; 1 Greenl. Ev. §§ 108–10; 1 Whart. on Ev. § 259 ; 1 Greenl. Ev. § 283. (2). That parol evidence is admissible to show that a deed or bond was in fact executed on a different day from that stated in it, is undoubted.—*Miller v. Hampton*, 37 Ala. 342 ; *Lockett v. Child*, 11 Ala. 640. (3). All written contracts may be examined in the light of extrinsic and surrounding circumstances. And while it is true, that parol evidence can never be introduced to contradict or vary the terms of a written contract, yet parol evidence of surrounding facts and circumstances may always be introduced to explain the terms of a written contract, where the terms are not in and of themselves sufficiently plain and obvious, or where other evidence has already been introdued tending to make such terms uncertain.—*Simpson v. Kimberlin*, 12 Kansas, 579. See also *Fort v. Orndoff*, 7 Heisk. 167 ; *McArthur v. McArthur*, 5 Hun, 63 ; *Taylor v. Preston*, 79 Penn. St. 436. If, then, it can be shown that the bond and deed relate to one and the same transaction and are contem-

[Robbins v. Webb.]

poraneous ; that no land transaction took place between these parties except this one, and that the land referred to in the bond is part of the lands conveyed by the deed, the averments of the bill, certainly as amended, are sufficient to allow the proof to be made.    When made complainants are entitled to relief.—*Hughes v. Wilkinson*, 35 Ala. 453 ; *Cowles v. Garrett's Adm'r*, 30 Ala. 341 ; *Parish v. Gates*, 29 Ala. 254, and authorities cited ; *Holman v. Crane*, 16 Ala. p. 570. (4).    " The reference from one writing to another may be quite indirect, or by implication merely."    4 Phil. on Ev. p. 1421.    And the rule is not to be so interpreted, as to exclude evidence for the purpose of applying the terms of the reference.    *Ib*. C. & H.'s Notes, p. 1423-4.    (5). Contemporaneous writings may be construed together, when between the same parties, and relate to the same subject-matter, although no reference is made to one in the other, as between the parties.    2 Parsons on Con. p. 553.    (6). But is it necessary in this case, that the writings should be contemporaneous?    Smith was one of the obligors on the bond, and the appellee is a purchaser from Smith, with notice.    He, therefore, holds under Smith, and only gets by Smith's conveyance what Smith had to convey ; and this was the land encumbered with the covenant in the bond.—*Coles v. Sims*, 6 De Gex. M. & G. 1, and notes ; 2 Sug. on Ven. p. 596-7 ; 4 Paige, 510 ; 11 Paige, 414 ; 17 Wend. 136 ; 16 Pick. 68.    (7). The appellee having purchased with notice of the bond, and he, Smith and McLeod being insolvent, the bill should be entertained to protect the appellants from irreparable injury.    High on Inj. §§ 1335 *et seq.*

JOHN Y. KILPATRICK and R. GAILLARD, *contra*.    (1). It is admitted, that when two instruments are connected *by reference, one to the other*, they may be considered and construed as constituting but one transaction.    But in this case that principle can have no application.    The bond and deed bear different dates ; they make no reference, the one to the other ; the deed conveys more land than is described in the bond ; the bond recites that *McLeod* bought the land, but the deed conveys the land to *Smith* ; the deed to Smith contains no limitation upon, or qualification of the fee, but does contain full covenants of warranty.    Two such instruments executed under such circumstances, can not be construed together. (2). The covenant sought to be enforced, being in restriction of trade, is contrary to public policy and void.—*Hubbard v. Miller*, 15 Am. Rep. 153 ; *Nobles v. Bates*, 7 Cow. 307 ; *Pierce v. Fuller*, 8 Mass. 226 ; *Chappel v. Brockway*, 21 Wend. 159 ; *Mitchell v. Reynolds*, 1 Smith's Lead. Cases, Part 2, p. 641, and

[Robbins v. Webb.]

note. (3). Webb is under no bond to any one. He received an unqualified deed from Smith, and gave to him no bond. There can be no equity in the bill as against him. Complainants' remedy, if they have any, is against the obligors on the bond. If the obligors are insolvent, that is their misfortune. (4). But we insist, that the complainants are without remedy, either at law or equity, because the bond was personal to Gregg, and was not to him and his heirs etc. 2 Wasb. on Real Pro. 688.

SOMERVILLE, J.—The main question in this case, a solution of which determines the equity of complainants' bill, is, whether the two written instruments, the deed and the bond, which are made exhibits to the bill, are parts of one and the same contract, and, as such, can legally be construed together.

The one is a deed from Gregg to Smith, dated February 26th, 1859, conveying certain land to the latter in fee simple, without condition or limitation.

The other is a penal bond, dated February 19, 1859, reciting that Alexander McLeod had "bonght" a certain tract of land from said Gregg, which is shown to be a part of the same lands conveyed to Smith. This bond is signed by both Smith and McLeod as obligors, and binds each of them, their representatives and assigns, " not directly or indirectly to permit or allow a warehouse or place for the shipping or receiving of goods either upon or through said premises," and agreeing to give Gregg " the free and unmolested use of the premises for the delivery of spars and lumber." Gregg was the proprietor of a warehouse, at or near the same landing on the Alabama river, situated on land which, on his decease, descended to the complainants who are his heirs at law.

The appellee, Webb, purchased the land described in the bond from Smith, with full notice of the existence and contents of the bond, and erected thereon a warehouse, and proceeded to carry on the business of shipping and receiving goods. This bill is filed to enjoin him from continuing to engage in such business as warehouseman, in alleged violation of the covenant of his vendor, Smith, not to do so.

The deed and the bond may be connected together by proper averments, we think, without violating the cardinal rule, applicable alike to courts of law and equity, with of course established exceptions, that parol evidence is not admissible to contradict, qualify or vary a written instrument. 2 Story Eq. Jur. § 1531. These two instruments relate in part to the same subject matter, and, though of different dates, were

[Robbins v. Webb.]

operative only from the date of delivery. Hence, parol evidence is admissible to show the true date upon which either or both of them were executed, even though different from those appearing on the face of the instruments themselves. *Miller v. Hampton*, 37 Ala. 342. So there is nothing repugnant between the recital of the bond that McLeod had "bought," and the fact of the conveyance of title being made to Smith, as a bond for title may have been first made to the former, and afterwards a deed absolute to the latter. Extrinsic evidence would be admissible to show all the facts and circumstances, not inconsistent with these instruments, surrounding the main fact, which is here the transaction of sale, connected or contemporaneous with, or in any manner proximately throwing light upon it. It is not necessary that these events, so proved, should have transpired on the same day in order to be contemporaneous within the meaning of the law. The averments in the bill and proposed amendment, if true, are sufficient to authorize the two instruments to be construed together.—2 Story's Eq. Jur. § 1531 ; 4 Phil. Ev. (C. & H's Notes), 1421–4 ; 2 Parson's Cont. (6th Ed.) 553 ; 1 Whart. Ev. § 259 ; *Holman v. Crane*, 16 Ala. 577.

The contract in question was not void as against the public policy. Contracts restraining the exercise of any trade, profession or business, are legal when there is a fair and reasonable ground for the restriction, and they are confined to a limited locality, not unreasonably large or extensive. *Mayor v. Pattison*, 10 East. 136 ; 1 Addison on Contr. § 272 ; *Noble v. Bates*, 7 Cow. 307.

A covenant of this character, furthermore, "runs with the land," and the right to enforce it passes to the personal representative, heirs, and assigns of the covenantee. It is also binding on the personal representative, heirs and assigns of the covenantor, and also upon all purchasers from him with notice of the encumbrance.—*Spencer's Case*, 1 Smith Lead. Cases, (Hare & Wall.), 140, *note*.

And a court of chancery will, in such a case, restrain by injunction the breach of the conditions or terms of the covenant, asserting jurisdiction by an equity in the nature of specific performance.— *Guerand v. Dandelet*, 32 Md. 561 (3 Amer. 164) ; *Kemp v. Sober*, 1 Sim. (N. S.) 520 ; 3 Wait's Act. & Def. 693, § 6.

The amendment proposed to the bill of complaint should have been allowed.

The chancellor erred in sustaining the demurrer and dismissing the bill. His decree is reversed, the injunction reinstated and the case remanded.