# Webb *v.* Robbins.

*Bill in Equity to enforce Covenant running with Land.*

1. *Appeal; when returnable.*—When an appeal to this court is taken during term time, it may be made returnable to the first Tuesday in any month during the term (Code, § 3925); but the statute is not mandatory, and if the appeal is not so made returnable, or if it is sued out in vaca-

[Webb v. Robbins.]

tion, it is returnable, by operation of law, to the next regular term of the court.

2. *Affirmance on certificate; failure to file transcript.*—If the transcript is not filed during the term to which the appeal is taken, the appellee may have an affirmance on certificate; but, if he fails to ask this, and nothing is done with the cause during that term, it passes over to the next term, and a motion to dismiss then comes too late.

3. *Conveyance to married woman, "to her only proper use and behoof."* A conveyance of lands to a married woman, "to her only proper use and behoof," excludes the marital rights of her husband, and creates in her an equitable estate, as distinguished from a statutory estate.

4. *Variance between allegations and proof.*—Where the bill alleges that the complainants, married women, own the lands in controversy, or their respective interests therein, "as their separate estate under the married women's law of Alabama," while the evidence shows that their interests are held under a conveyance which creates an equitable estate, the variance is fatal.

5. *Waiver of objections to evidence.*—Objections to evidence, not raised in the court below, will be considered as waived, and will not be noticed by this court on appeal.

6. *Admission as to notice by purchaser.*—When lands are subject to an easement or restricted use under a conveyance from a remote vendor, a sub-purchaser who admits in his answer that, before his purchase, "he was informed of the existence of some such obligation," is chargeable with notice of all facts relating to the nature, character and extent of the obligation or restriction, which he might have ascertained by due inquiry from the persons claiming the benefit of it.

7. *Conveyance of lands with restriction as to use.*—The owner of lands, in making a sale and conveyance of them, may reserve and retain a servitude or easement in them, or impose restrictions upon their use by the purchaser or his assigns, deemed injurious to the use or value of the vendor's adjoining lands; and when such restrictions are not in general restraint of trade, nor otherwise illegal, they may follow the lands in the hands of subsequent purchasers with notice.

8. *Jurisdiction of equity to enforce such covenant.*—A court of equity will enforce by injunction, against a sub-purchaser with notice, a covenant running with the lands, and restricting the use thereof; and this jurisdiction is not dependent on the insolvency of the defendant.

APPEAL from the Chancery Court of Wilcox.

Heard before the Hon. N. S. GRAHAM.

The original bill in this case was filed on the 30th October, 1879, by Mrs. Sarah S. Robbins, Mrs. Viola S. Curtis, and Mrs. Alice G. Mayer, married women, who sued as the heirs at law of their deceased father, Robert H. Gregg, against William H. Webb; and sought to enjoin and restrain the defendant from the further use of a public warehouse and landing on the river, just below another warehouse and landing known as "Lower Peach Tree Landing," which belonged to the complainants, on the ground that such use of the property was violative of a covenant running with the land, which was attached to it by the terms of the sale and conveyance by said Robert H. Gregg to the defendant's vendor, and of which the defendant had notice at or before the time of his purchase. The case was before this court at a former term, on appeal

12

from a decree of the chancellor dismissing the bill on demurrer, and dissolving the injunction which had been granted when the bill was filed; when the decree was reversed, and the cause remanded.—*Robbins v. Webb*, 68 Ala. 393.

After the amendment of the cause, the bill was amended.

It appears from the allegations of the bill, the exhibits, and the proof, that in February, 1859, said Robert H. Gregg being then the owner of the said warehouse and landing at Lower Peach Tree, and also the adjoining tract of land on which the defendant's warehouse was afterwards erected; and one Alexander McLeod desiring to purchase the latter tract of land, on which he intended, in conjunction with one Thomas C. Smith, to establish another warehouse and public landing; said Gregg refused to sell any part of the land, unless McLeod would give a written obligation binding himself and said Smith not to erect or permit the erection of any public warehouse and landing for receiving and shipping goods on the river at that point; and this condition was acceded to by said McLeod and Smith. In pursuance of this agreement, McLeod and Smith executed to Gregg a penal bond, which was dated February 19th, 1859, and conditioned as follows: "The condition of this obligation is, that on this day and date above written, the said Alex. McLeod has bought of said R. H. Gregg one certain lot of land, lying and being on the Alabama river," &c., describing it; "they having agreed with the said Gregg, that they will not themselves, nor by their executors, administrators, or assigns, directly or indirectly, ever permit or allow any warehouse, or place for the shipping or receiving of goods, either upon or through said premises; and that they will always allow said R. H. Gregg, freely and unmolested, to use said premises for the delivery of spars and lumber." On the 26th February, 1859, Gregg and wife executed and delivered to said Smith, at the instance of said McLeod, an absolute conveyance of the tract of land, reciting the payment of $3,000 as its consideration, and containing full covenants of warranty; and this conveyance contains no restriction on the use of the premises conveyed, and no reference to the written obligation above mentioned. Copies of this conveyance and of said obligation were made exhibits to the bill, and it was alleged that they were parts of one and the same transaction, and that the defendant was informed of the existence and extent of this covenant and obligation at and before his purchase of the land. The conveyance by said Smith and wife to the defendant was dated April 2, 1878, and it contains no reference to the obligation, or the restricted use of the land. The bill alleged that the complainants were "the sole owners of said Lower Peach Tree warehouse, landing and property, and it belongs to them as their separate estate

[Webb v. Robbins.]

under the married women's law of the State of Alabama";
and it contained the further allegations, that said Smith and the
defendant were each insolvent, and that the estate of said
McLeod, who was dead, was insolvent.

After the remandment of the cause, the bill was amended by
striking out the averment that the complainants sued as the
heirs at law of said Robert H. Gregg, and adding an averment
in these words: "Complainants own and possess said warehouse,
landing and property, through, under, and by virtue of a cer-
tain deed of conveyance by the said Robert H. Gregg, and
through, under, and by virtue of the last will and testament of
said Gregg, and through, under, and by virtue of certain mesne
deeds and conveyances, made by those to whom said Gregg
conveyed and devised said property; all of which deeds, con-
veyances and will were made, executed, probated and delivered
before the commencement of this suit, as will be made fully to
appear by the production thereof," &c. The allegation as to
the character of the complainants' estate in the lands was not
struck out. These several conveyances were produced and
proved, and their contents, or the material parts thereof, are
stated in the opinion of the court.

After the remandment of the cause, and the overruling of
the defendant's demurrer, he filed an answer to the bill; ad-
mitting that, "before the sale of said lands by said Smith and
others to him, respondent was informed by said Smith of the
existence of some such obligation," but alleging that he had
never seen or read the obligation until some time after his pur-
chase was consummated; also denying that the obligation was
binding on him, or was of any legal effect whatever except
between the immediate parties; denying the allegation as to
the complainants' ownership of the land, and requiring strict
proof thereof; and denying the allegations as to the insolvency
of Smith and himself.

On final bearing, on pleadings and proof, the chancellor ren-
dered a decree for the complainants; and his decree is now
assigned as error.

The appeal was sued out on the 7th September, 1882, and an
appeal bond was filed and approved on that day. ·On the 1st
March, 1883, a citation was issued by the register, notifying
the appellees to "appear at the April term. 1883, of the Su-
preme Court of Alabama, to defend against said appeal;" and
service of this citation was acknowledged on the same day.
On the 24th of March, 1883, the register issued another cita-
tion, which, after reciting that it was "impossible to have the
transcript in said cause ready in accordance with the citation
heretofore issued," notified the appellees to "appear on the
first Tuesday in May, 1883, of the December term, 1882, of

the Supreme Court of Alabama, to defend on said appeal."
The certificate of the register states, that the appeal was taken
to the "first Tuesday in May, 1883, of the December term,
1882." The transcript was filed in this court on the 27th April,
1883. On these facts, as shown by the record, the appellees
submitted a motion to dismiss the appeal; and the cause was
also submitted on the merits at the same time.

R. GAILLARD, and JNO. Y. KILPATRICK, for the appellant.
(1.) The conveyance by Mrs. Gregg to Mrs. Robbins created
an equitable estate in the grantee.—*Short v. Battle*, 52 Ala.
456; *Smith v. McGuire*, 67 Ala. 34. (2.) As to the claim
and title of Mrs. Robbins, the variance between the allegations
and the proof is fatal.—*Milhous v. Weeden*, 57 Ala. 502;
*Schaffer v. Lavaretta*, 57 Ala. 14; *Alexander v. Taylor*, 56
Ala. 60. (3.) As one of the complainants can not recover,
the misjoinder is fatal to the others.—*Jones v. Reese*, 65 Ala.
135; *Dunklin v. Wilson*, 64 Ala. 162; *Johnson v. Murphy*,
60 Ala. 288; *Schaffer v. Lavaretta*, 57 Ala. 14. (4.) The
proof shows that the complainants are married women, and
their husbands should have been joined with them as complain-
ants.—*Pitts v. Powledge*, 56 Ala. 150; *Sawyers v. Baker*, 72
Ala. 49; *Michan v. Wyatt*, 21 Ala. 813. (5.) Gregg's con-
veyance to Smith, and Smith's bond to Gregg, are dated on
different days, with an interval of seven days between them,
and the latter in date contains no reference to the former; and
it is submitted that, on the evidence, they are not shown to
constitute parts of one and the same transaction. If the two
instruments are to be construed together, the obligation or re-
striction does not run with the land, so as to bind the defendant,
being in restraint of trade and commerce, though it may have
been valid as against Smith and McLeod.—2 Washb. Real
Property, 688; 2 Stockt. Ch. 189; 7 El. & Bl. 816; *Brewer
v. Marshall*, 3 C. E. Green, 337; 4 *Ib.* 537; *Kellogg v. Wood*,
4 Paige. (6.) The allegation of insolvency is denied by the
answer, and is not proved; and without such insolvency, the
complainants have an adequate remedy at law, if they are in-
jured.

S. J. CUMMING, *contra*. (No brief on file.)

STONE, C. J.—The motion to dismiss the appeal in this
case is based on a misapprehension of the effect of the act ap-
proved March 6, 1875.—Code of 1876, § 3925. The terms of
that statute do not make it compulsory that appeals, taken dur-
ing the session of this court, *shall be* made returnable to the
first Tuesday in some month of the term, during which the ap-

[Webb v. Robbins.]

peal is taken.   It only provides that they may be so taken.
This statute provides only a cumulative remedy, and does not
repeal section 3916 of the Code.   We have several times held,
that when an appeal is taken to this court, which is silent as to
the time to which it is returnable, whether such appeal is taken
during vacation, or during a term of this court, it stands re-
turnable, by the mere force of the statutes, to the regular an-
nual term of this court, which commences its session next after
the suing out of the appeal.   The appeal in this case, being
sued out in September, 1882, was returnable to the first Tues-
day in December, 1882.   There was but one appeal in this case,
although the clerk issued two citations.   Citations do not con-
stitute an appeal.   They are only notice that one has been
taken.

Nor does the fact that no notice is taken of an appeal at the
term to which it is taken, nor that the transcript is not then
filed, impair the force of the appeal, unless the appellee invoke
and obtain the action of the court, on a motion to affirm for
want of a transcript, or for want of assignment of errors; or a
certificate is obtained under the 29th rule of practice in
this court.   Nothing being done at such first term, the cause
passes over to the next term.   The motion to dismiss the ap-
peal is overruled.—Code, § 3953.

The bill, § 7, avers that the Lower Peach Tree warehouse,
landing and property belong to the three complainants, Sarah
S. Robbins, Viola S. Curtis, and Alice G. Mayer, and that
they belong to them " as their separate estate under the mar-
ried women's law of the State of Alabama."   This is equiva-
lent to an averment, that it is their statutory separate estate.
The answer to this averment is, " that he can not admit that
the complainants are the sole owners of said Lower Peach Tree
Landing, warehouse and property, and that it belongs to them
as their separate estate under the married women's law of the
State of Alabama, and requires strict proof of said allegation."
There was an amendment of the bill, filed December 24, 1879,
but it does not relate to this question.   The proof shows that
Mrs. Sarah S. Robbins owned two-thirds of the said property by
regular chain of documentary title, from R. H. Gregg, her
father, down to her.   The deed to her was from her mother,
Elizabeth H. Gregg ; and Mrs. Robbins being then a married
woman, the language of that deed—" to the only proper use
and behoof of the said Sarah S. Robbins, her heirs and assigns,"
under our uniform rulings, vested in her an equitable separate
estate as to the said two-thirds of said property.—*Cuthbert v.
Wolfe,* 19 Ala. 373 ; *Caldwell v. Pickens,* 39 Ala. 514; *Short
v. Battle,* 52 Ala. 456 ; *Miller v. Vass,* 62 Ala. 122 ; *Smith v.
McGuire,* 67 Ala. 34.

The third of the property which had belonged to William E. Powe, depends on a different chain of title. Powe had conveyed his third to Hestle, trustee, to secure the payment of a debt of four thousand four hundred dollars, acknowledged to be due from him to his five children, Lavinia E., then the wife of Hestle, the trustee, Clara S., Alice G., Viola S., and Margaret E., Powe. This mortgage security contained a power of sale. Margaret E. has died, and the others have married. There is no documentary evidence that Hestle has ever sold or conveyed this property; but Robbins testified such sale was made, and that the four daughters, Lavinia, Clara, Alice and Viola, became the purchasers. This proof was oral, but no exceptions were filed to its admissibility before the chancellor. *Binford v. Dement,* 72 Ala. 491. Taking this testimony into the account, it is shown that Alice Mayer and Viola Curtis each became the owner of one-fourth of Powe's third interest, equal to one-twelfth of the entire ownership of the property; and the remaining two-fourths of that third—two-twelfths of the whole property—became the property of Sarah S. Robbins. These conveyances have no words of exclusion, and consequently these titles create a statutory separate estate. It is thus shown that, as to eight-twelfths of this property, Mrs. Sarah Robbins holds it as her equitable separate estate; while, as to the remaining four-twelfths, they are statutory separate estate—two-twelfths being in Mrs. Robbins, and one-twelfth each in Alice Mayer and Viola Curtis. There is a fatal variance between the allegations and proof, as the pleadings now stand. *Milhous v. Weeden,* 57 Ala. 502; *Conner v. Smith,* 74 Ala. 115; *Young v. Hawkins, Ib.* 370; *Lewis v. Montgomery B. & L. Asso.,* 70 Ala. 276; 1 Brick. Digest, 743, § 1538.

No question is raised by the pleadings as to the non-joinder of complainants' husbands, as their trustees. Should an amendment be offered, it would be well to consider that question. *Pitts v. Powledge,* 56 Ala. 147; *Sawyer v. Baker,* 72 Ala. 49.

There is found in the transcript what purports to be an amendment to the bill, offered on the day the cause was submitted. No ruling seems to have been had upon it. It does not cure the errors in the bill, nor harmonize it with the proof.

With the exception of the variance above pointed out, we think the complainants have fully made out their case. The points are, first: That the two instruments—the deed and bond—were executed at one time, and were intended to relate to one and the same transaction. We think this is satisfactorily proved; and if the positive testimony leaves the question at all in doubt, the conduct of Smith under it, and even the conduct of Webb, while he was in possession as tenant, leave no doubt that the bond was intended to be a restriction on

Smith's right of use. The proof comes fully up to the principles declared when the case was before us on the pleadings. *Robbins v. Webb,* 68 Ala. 393. Second : Had Webb notice of the bond before he concluded his purchase ? Speaking of the bond or obligation given by Smith and McLeod, not to do or suffer warehousing or shipping on or from the lands purchased, Webb, in his answer, says : " He admits that he was informed by the said Smith, before the said sale by said Smith and others to him on the 2d April, 1878, of the existence of some such obligation." This, without more, was enough to make it Webb's duty to seek from Robbins, or those claiming the warehouse property, information of the nature of such obligation, if any existed; and failing to do so, he is chargeable with notice of every thing such inquiry would have led to. *Hodges Bros. v. Coleman & Carroll,* 76 Ala. 103. It can not be questioned, that if he had made the inquiry, he would have learned the exact state of the case. We think, however, the testimony in this case authorizes us to go further. We are convinced that Webb, before the trade was concluded, if not before it was entered upon, knew the nature of the obligation, and that he acted on the belief—possibly on advice—that such obligation enured to the benefit of R. H. Gregg alone, and only bound Smith and McLeod ; and that it could not operate for or against any other person, succeeding to the ownership of the several parcels of land.

It is clearly competent, in making a sale of real estate, to retain an easement or servitude in the lands sold ; and, when not in general restraint of trade, the seller may retain in himself certain uses of the freehold, which would otherwise pass to the grantee. Such retention, or limitation of the use, being a condition upon which the estate is acquired, attaches as an infirmity in the estate itself, and as a privilege or easement in the estate of the grantor, in whose favor the limitation is imposed. This easement and this disability follow the several parcels of land, into whose hands soever they may pass, with notice, actual or constructive, of their existence. If the limitation or restriction is expressed in the conveyance, that is notice to all persons acquiring an interest in the freehold. If not so expressed, then notice must be otherwise shown, to charge a purchaser with the servitude. We think this case falls directly within this principle, and that the owners of Lower Peach Tree landing and warehouse property are entitled to a perpetual injunction, as prayed for, upon making their allegations of title correspond to their proof. And this is a case peculiarly within the jurisdiction of a court of equity, which does not require the insolvency of the defendant to uphold it.—High on Injunctions, 2d ed., §§ 850, 851, 1153, 1154 ;

[Danner Land and Lumber Co. v. Stonewall Insurance Co.]

*Hills v. Miller*, 3 Paige, 254 ; *Trustees of Watertown v. Cowen*, 4 Paige, 510 ; *Seymour v. McDonald*, 4 Sandf. Ch. 502 ; *Clark v. Martin*, 49 Penn. St. 289.

Reversed and remanded.