# Terre Haute Brewing Co. v. McGeever, *et al.*

## Assumpsit.

(Decided November 16, 1916. Rehearing denied January 18, 1917. 73 South. 889.)

1. **Pleading; Non Est Factum; Joint Defendants.**—The plea of non est factum is personal and single and where four sureties are sued on a joint and separate undertaking a plea of non est factum by all defendants jointly is bad on demurrer; to permit such a plea would require plaintiff to prove that all executed the bond before he could have judgment against any, whereas he is entitled to judgment against the signers although others sued may not have signed.

2. **Same.**—Where the action is joint and several against sureties on a bond a joint plea of non est factum is not a defense to the action in so far as it is several.

3. **Same; Objects; Issues.**—The object of all pleading is that the parties be brought to issue, which ought to be material, single and certain and not confused, obscure or prolix.

4. **Principal and Surety; Contract; Validity; Performance Without State.**—Where there was no showing of conspiracy between the seller and the buyer to violate the laws of this state or that the violation of those laws entered into the consideration or induced the making of the contract a bond given to secure a contract for the sale of beer and the return of empty bottles, which was made and was to be performed outside of the state (except as to the return of the empty bottles) is not void although the buyer sold the beer thereafter.

5. **Contracts; Validity; Restraint of Trade.**—A contract whereby the buyer agreed to buy all the beer he needed or bought from the other party to the contract is not void as in restraint of trade since it in no way affected the public interests or tended to create a monopoly or a trust.

6. **Same; Violating Law.**—A contract to do an act prohibited by law is void as against public policy.

7. **Same; Restraint of Trade.**—While a contract in general restraint of trade is against the policy of the law and void, yet not every contract of

purchase and sale is void for this reason unless it injuriously affects the public weal.

8. **Same; Partial Restraint.**—Contracts in partial restraint of trade are valid when properly restricted as to territory, time and persons so as to afford fair protection to the parties interested without being so extensive as to violate the law or to interfere with the public interest.

APPEAL from Birmingham City Court.

Heard before Hon. JOHN H. MILLER.

Assumpsit by the Terre Haute Brewing Company against Hugh McGeever and others on a joint and several obligation bond. The court overruled demurrer to defendant's pleas and the plaintiff took judgment of non suit and appeals. Reversed and remanded.

SERLING A. WOOD, for appellants.    RICHARD H. FRIES, for appellee.

MAYFIELD, J.—Appellant sued appellees on a bond, purporting to have been executed by appellees, as sureties, guaranteeing the faithful performance of a certain contract made between one Abe Siegel and appellant. This contract is alleged (and on its face purports) to be an Indiana contract, by which Abe Siegel agreed to purchase beer from appellant, the beer to be delivered f. o. b. cars at Terre Haute, Ind., and to reship to appellant, at said place, all empty bottles and other receptacles, for which he (Siegel) was to be allowed credit on his account at stipulated prices and amounts not necessary here to be specified. To the complaint all the defendants—four in number—filed a joint plea of non est factum, and a special plea as follows, numbered second:

"That the said Siegel mentioned conducted a licensed place of business at 1617 First avenue in the city of Birmingham, Ala., during the months of May, June, July, August, and September, 1912, in which said Siegel sold the beer referred to in the said complaint, and in each count thereof and by reason thereof, with the plaintiff's knowledge the said contract is null and void under the laws of this state."

The plaintiff demurred to these pleas, assigning numerous grounds of demurrer, unnecessary to be here set out. The trial court overruled plaintiff's demurrer to each of these pleas, whereupon plaintiff took a nonsuit; and plaintiff appeals to this court to test the correctness of the rulings which evoked the nonsuit.

[Terre Haute Brewing Co. v. McGeever, et al.]

(1) The plea of non est factum was bad for the reason that it was pleaded jointly and not separately, whereas the defense is personal and single as to each defendant.    Under this plea—issue being joined thereon—the burden of proof would have been on the plaintiff to prove the execution of the bond by all the defendants; and, if he failed in the proof as to any one, he would not be entitled to a judgment against the other three, because the plea would have been proven.   This, of course, is not the law. Conceding that the bond was not signed by one, but was signed by the other three, the latter would be liable, but the first not. That is to say, the defense is personal and several as to each, and not joint as to all.   If the defendants desired to file one plea for all, instead of four, one for each, the allegation should have been that the bond was not executed by any one of the four. Had this been done, the plaintiff could have met the plea by proof that any one of the four executed the bond; but the other defendants would have been held liable, though they had not executed the bond.    It thus appears that defendants would put themselves at a great disadvantage by filing one plea for all, with the allegation last suggested; but they would be at no greater disadvantage than the plaintiff with the allegation of the instant plea "that the defendants did not execute the bill."   The source and reason of the trouble is that the defense of non est factum, like that of infancy, insanity, etc., is a purely personal defense, and hence the plea should be filed by each separately, though all desire to avail of it.

(2) The action on the bond is both joint and several; the plaintiff is not, under the general issue, obliged to recover against all or none.   So far as the action is several, the joint plea is no answer.   It may be true that the note was executed by one, and not by the other three, or vice versa, and still the plaintiff would be entitled to recover against the one, or three, who did execute it; that is, so far as this defense is concerned.

(3) The chief object of all pleading is that the parties be brought to issue.   The issue thus arrived at ought to be: (1) Material; (2) single; and (3) certain.   Another fundamental purpose of pleading is to avoid confusion, obscurity and prolixity.

The trouble with the plea of non est factum, interposed in an attempt to prevent prolixity or repetition, is that all the other rules mentioned are violated.   A plea of non est factum denies that the deed, bond, or note sued on is the deed, bond, note, or bill of the defendant.   The defendant, under this plea, may show

[Terre Haute Brewing Co. v. McGeever, et al.]

that the instrument sued upon was never in point of fact executed by him; but such a plea does not, in point of law, deny the validity of the instrument, though its effect, if it is sustained, is a verdict or judgment in favor of the defendant. It is purely personal, and may be waived; and it is waived unless specially pleaded. And one defendant cannot interpose the plea for another, for the reason that the person who in point of fact may not have validly executed the instrument may nevertheless desire to be bound and to waive the invalidity of the execution. It, therefore, follows that the trial court erred in overruling the demurrer to the joint plea of non est factum.

(4) Plea 2 was likewise bad on demurrer. It alleged no facts which, if true, would constitute a defense to the action of covenant. The contract set up in the complaint, the faithful performance of which the bond sued on was made to guarantee, on its face had nothing to do with any business which Siegel should carry on in Birmingham or in this state. The undertaking was not an Alabama contract, but an Indiana contract, and was intended to be, and was, in fact, wholly performed in Indiana, except as to the part providing for the reshipping of empty bottles, barrels, casks, etc., which was not at all illegal. Nothing appears in the complaint or in the contract which tends to show that the parties were violating, or intended to violate, any law of Alabama, prohibition or otherwise. The fact, if it be a fact, that Siegel violated the laws of Alabama, after the contract was made, would not render the alleged contract void or voidable. The sale of the beer, as alleged, was, so far as appears, perfectly lawful. Not only this, it was not within the protection or the condemnation of the Alabama laws because made and to be performed beyond the jurisdiction of this state. The prohibition laws of this state do not, in fact, and were never intended to, apply to contracts of sales of liquors in other states. The attempt to give them such extraterritorial effect would make them void; and, as held by this, and all other state courts and the federal courts, the prohibition statutes of the states cannot be made to apply to interstate shipments of prohibited liquors, nor to contracts for such interstate shipments. Such state statutes are, of necessity and by constitutional restrictions, limited to intrastate sales, contracts, and shipments.

"The sovereignty united to domain," says Vattel, "establishes the jurisdiction of the nation in its territories, or the country which belongs to it. It is its province, or that of its sovereign, to

exercise justice in all places under its jurisdiction, to take cognizance of the crimes committed, and the differences that arise in the country."

"On the other hand," adds Story (Confl. L. 14, § 539), "no sovereignty can extend its process beyond its own territorial limits to subject either persons or property to its judicial decisions. Every exertion of authority of this sort beyond this limit is a mere nullity, and incapable of binding such persons or property in any other tribunals."—5 Mason, 35-42.

Burge, 1 Confl. 1, says: "It is a fundamental principle, essential to the sovereignty of every independent state, that no municipal law, whatever its nature or object, should extend beyond the territory of the state by which it has been established."

And again (3 Burge, Confl. 1044): "That the authority of every judicial tribunal, and the obligation to obey it, are circumscribed by the limits of the territory in which it is established."

Such is the familiar, reasonable, and just principle of the law of nations; and it is scarcely supposable that the framers of the Constitution designed to abrogate it between states which were to remain as independent of each other, for all but national purposes, as they were before the revolution.—*Steel v. Smith,* 7 Watts & S. (Pa.) 450; 7 Mayf. Dig. 489, 490.

It may be that if the plaintiff had entered into a conspiracy with Siegel, or had contracted with him in performance necessarily involving a violation of the prohibition law of Alabama, such contract would be void as against public policy; and certainly Alabama courts would decline to enforce contracts made with the intent to violate the laws of this state, though not in violation of the laws of the state in which the contract was made. No such facts, however, are alleged in this plea. The fact that Siegel conducted a licensed, or an unlicensed, place of business in Birmingham, Ala., during the year in which the contract was made, and sold beer in his business, would not avoid the contract here alleged, between plaintiff and Siegel, the faithful performance of which these defendants guaranteed. There are no allegations that plaintiff knew or suspected that the liquors sold to Siegel were to be resold in violation of the laws of Alabama; and, if plaintiff had had such knowledge, or notice, it would not have avoided the contract between the parties. To have this effect, the violation of the prohibition laws of this state must, in some way, have entered into the consideration of the contract of sale, or at least in some way have induced the

[Terre Haute Brewing Co. v. McGeever, et al.]

making of the contract; that is, the terms of the contract must have been such that it would not be performed without violating the prohibition laws of this state. The contract here set up had nothing to do with, and did not attempt to provide for the resale, by Siegel or any one else, of the beer purchased by him of plaintiff in Indiana. He could sell it, or not sell it, in or out of Alabama, at his pleasure; the contract here sued on did not attempt to regulate, control, or even to refer to, the disposition of the beer by Siegel. Its reference was only to his accepting it in Indiana, and to plaintiff's repurchase of the receptacles in which the beer was shipped out.

(5) The plea leaves it doubtful, however, whether it means to charge that the contract was void because a resale of the beer by Siegel, in Alabama, would be in violation of law, or to charge that it was void because Siegel agreed to buy all the beer he needed or purchased from the plaintiff, and so was committed to an undertaking in restraint of trade. The trial judge wrote an opinion, giving his reasons for holding the pleas good. It holds that the contract was void and unenforceable on both grounds; because it was in violation of section 28 of the Smith Bill (Gen. Acts 1911, p. 266), and because it was in restraint of trade, and against public policy, for one man to agree to buy all his beer from one other man or one corporation. We cannot agree with the trial judge on either of these two grounds. We have shown that the Alabama statute cannot be made to apply to contracts not made in Alabama, nor to contracts not to be performed in Alabama. The statute is, of course, limited to Alabama contracts, to those which are either made here or are to be performed here. The contract here in question was made in Indiana, and was to be wholly performed there. It had nothing whatever to do with sales by Siegel in Alabama or elsewhere; it related solely to a purchase by Siegel from the plaintiff in Indiana.

It is certainly not unlawful, nor in restraint of trade in an unlawful sense, for one man to agree to purchase all his beer, whisky, or tobacco from one other man or corporation. The public is not at all interested or concerned in from whom he purchases, or whether he purchases anything. He might agree not to purchase any liquor from any one, and the agreement would be perfectly valid. A special contract, in order to be void because in restraint of trade, and therefore against public policy, must have a tendency to prejudice or injure the public. It must

have a tendency to curtail or diminish the supply of some article or commodity of necessity, or of something in the nature thereof, and thus to injure the public, or it must have a tendency to create a monopoly or from a trust, by placing the whole, or the greater part, of the supply of such article or commodity within the control of one or a few persons or corporations, with the power to absolutely fix the price thereof, or must have some other tendency to injure the public. The contract in question has no such character or tendency. It may prevent Siegel from buying beer from some other person or corporation, but that does not affect the public at all. The following propositions of law, and authorities cited, are conclusive of the question:

(6, 7) A contract to do an act forbidden by law is, of course, void as against public policy. Contracts in general restraint of trade violate the policy of the law, and are therefore void. Every contract, however, which at all restrains or restricts trade, is not void; it must injuriously affect the public weal; that it may affect a few or several individuals engaged in a like business does not render it void. Every contract of purchase and sale to some extent injures other parties; that is, it necessarily prevents others from making the sale or sales consummated by such contract. This is clearly true of every contract to purchase in the future, or to sell goods to be made in the future, or to purchase the entire output of a mine or all the grain or cotton produced by one or several parties during a season or seasons; but no one ever contended that such were void, unless affecting persons or territory sufficient to constitute it a monopoly, pool, or trust of the article in question.

(8) Contracts in partial restraint of trade are always upheld, when properly restricted as to territory, time, and persons, where they are supported by sufficient consideration.—*Moore & Handley Co. v. Towers Co.,* 87 Ala. 206, 6 South. 41, 13 Am. St. Rep. 23, and note; *Tuscaloosa Co. v. Williams,* 127 Ala. 110, 28 South. 669, 50 L. R. A. 175, 85 Am. St. Rep. 125, and note; *Linn v. Sigsbee,* 67 Ill. 75; *Hursen v. Gavin,* 162 Ill. 377, 44 N. E. 735.

It must be remembered that in this case there was no contract to violate the laws of any state; no contract not to engage in any lawful trade or business; no contract the effect of which was to deprive the public of any worthy or necessary industry.

The test as to whether a contract in restraint of trade is reasonable or partial and valid or is general and unreasonable is

[Dinsmoor v. Thomas.]

whether it affords fair protection to the parties' interests, without being so extensive in its operation as to violate the law in its execution, or as to interfere with the interest of the public, as distinguished from private interests.—*McCurry v. Gibson,* 108 Ala. 451, 18 South. 806, 54 Am. St. Rep. 177.

It follows that the trial court erred in overruling the demurrer to each of these pleas.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.