495 So.2d 630 (1986)
J.A. TOMLINSON
v.
HUMANA, INC., d/b/a Humana Hospital Russellville, et al.
85-175.
Supreme Court of Alabama.
September 12, 1986.
*631 Henry H. Self, Jr., and Michael J. Bernauer, Florence, for appellant.
Frank V. Potts and T. Michael Putnam of Potts, Young, Blasingame & Putnam, Florence, for appellee Humana, Inc.
Andrew P. Campbell and S. Lynne Stephens of Leitman, Siegal & Payne, Birmingham, for appellees R.R. Braund, M.D., and Shoals Medical Laboratory.
JONES, Justice.
This is an appeal from a summary judgment which upheld the use of an exclusive service contract between a physician and a hospital. Dr. J.A. Tomlinson, a medical doctor with a specialty in pathology, sued Dr. Ralph Braund, also a pathologist; Braund's professional corporation, Shoals Medical Laboratory, Inc. (SML); and Humana, Inc., d/b/a Humana Hospital Florence, Humana Hospital Shoals, and Humana Hospital Russellville.
In 1981, Dr. Braund and SML hired Dr. Tomlinson as an associate pathologist. After being granted full staff privileges at the three Humana hospitals, Dr. Tomlinson began performing pathological services for Humana as Braund's employee under the exclusive service contract existing between Braund and Humana. By the terms of the contract, Braund was required to supply all primary pathology services needed at the three defendant hospitals on a 24-hour basis, and to administer and supervise the operation of the in-house hospital laboratories. This contract was reviewed and extended annually.
Tomlinson worked for Braund for approximately three years, until June 1984, when his employment was terminated. After his discharge by Braund, Tomlinson attempted to continue practicing pathology at the Humana hospitals, whereupon he was informed by the hospitals that he would no longer be allowed to perform primary pathology services at those hospitals because of the exclusive contract with Dr. Braund. He was allowed, however, to provide secondary pathology consultations when specifically requested by a patient or physician.
Tomlinson then attempted to negotiate a contract with Humana similar to the one held by Braund. When negotiations failed, he filed suit against the Defendants, alleging that the exclusive contract between Braund, SML, and Humana restrained him in the practice of his profession. Depositions and affidavits were filed by all parties; based upon them, the trial court granted a summary judgment in favor of all Defendants. This appeal followed.
It is Tomlinson's contention that the contract between Braund and Humana is void under Code 1975, § 8-1-1(a), as a restraint on the practice of a profession. Section 8-1-1(a) reads:
"Every contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind than otherwise provided by this section is to that extent void."
Tomlinson argues that § 8-1-1(a) prohibits every contract (other than those specifically excepted by that section itself) which restrains the practice of a profession in any way.
Assuming, without deciding, that this statute applies to the facts of this case, this Court has long held that not every contract *632 which imposes a restraint on trade or competition is void. Contracts which impose only a partial restraint on competition are permitted when the public welfare is not injured and the contract is properly restricted as to persons and territory affected. In Terre Haute Brewing Co. v. McGeever, 198 Ala. 474, 73 So. 889 (1916), this Court held that a contract, whereby a retailer agreed to buy all the beer he needed from the other party, was not void as a restraint on commerce or competition, because it amounted only to a partial restraint on trade and did not affect the public interest. Denton v. Alabama Cotton Co-op Ass'n, 30 Ala.App. 429, 7 So.2d 504 (1942), involved "an agreement by cotton warehousemen to recognize only the classification of cotton made by a cotton classer of their own selection to the exclusion of all other licensed classers."
In Denton, the Court of Appeals held that "it is not unlawful for any number of persons, without an unlawful object in view, to associate and agree that they will not work for, employ or deal with certain individuals or classes of individuals." 30 Ala.App. at 432, 7 So.2d at 507.
The evidence shows that hospitals generally provide pathology services as part of the routine care and treatment of patients. In the discharge of their obligations, they must provide pathology labs or facilities for carrying out these services. As a necessary incident thereto, hospitals require the services of a pathologist. It is the usual custom of hospitals to hire a staff pathologist or to contract with an outside laboratory or pathologist, such as SML or Braund, to provide the necessary pathology services. This Code section was not intended to hinder the carrying out of these obligations. We reject, therefore, Tomlinson's contention that this Code section should be given such a literal interpretation as to prohibit a contract like this.
It is undisputed that Humana's contract with Braund affected only a partial restraint and is properly restricted, under the definition of "restraint" found in Terre Haute Brewing Co., supra. The contract in question has no effect on Tomlinson's ability to practice pathology at any of the other area hospitals, nor do they completely prohibit him from practicing at the Humana hospitals. He may still render secondary pathology services upon request of the patients or other physicians.
Furthermore, Tomlinson has failed to show any adverse effect upon the public welfare by the use of this contract. On the other hand, Braund and SML have presented evidence that the public does benefit from the use of this exclusive contract for the provision of pathology services; and that these benefits include improved patient care, more efficient allocation of hospital resources, and smoother operation of the hospital departments.
In conclusion, we agree with the trial court that, based on the evidence before it, there was no genuine issue of any material fact and that the Defendants were entitled to judgment as a matter of law. The summary judgment is affirmed. Rule 56(c), A.R.Civ.P. Chiniche v. Smith, 374 So.2d 872 (Ala.1979); Henderson v. Hanson, 414 So.2d 971 (Ala.Civ.App.1982).
AFFIRMED.
SHORES, ADAMS, and STEAGALL, JJ., concur.
TORBERT, C.J., concurs specially.
TORBERT, Chief Justice (concurring specially).
I concur specially, not because I disagree with the reasoning of the Court's opinion in this case, but to emphasize an important factual distinction which this case presents, a distinction which may also foreclose recovery under Code 1975, § 8-1-1(a).
The Court's opinion correctly states that we have long held that contracts imposing partial restraints on trade often do not offend § 8-1-1. See, e.g., Gafnea v. Pasquale Food Co., 454 So.2d 1366 (Ala.1984); Famex, Inc. v. Century Insurance Services, Inc., 425 So.2d 1053 (Ala.1982); Hibbett Sporting Goods, Inc. v. Biernbaum, 391 So.2d 1027 (Ala.1980). A partial restraint *633 is permissible if it is not overly extensive and if it does not interfere excessively with the public interest. See, e.g., Gafnea, 454 So.2d at 1368-69. I agree with the Court's opinion in this case that the contract between Humana and Braund is neither so extensive nor so injurious to the public interest as to be void under § 8-1-1. However, I question whether a non-party to a "restrictive" contract (such as the appellant) can state a claim under this statute.
Neither the appellant nor the appellees cite any cases in which a non-party has attempted to set aside a contract under § 8-1-1 because that contract restrains the non-party's pursuit of a trade or a profession, and the appellant admits that this is a case of first impression. On the other hand, the cases are legion in which § 8-1-1 has been invoked by the actual parties in attempts to avoid or enforce restrictive terms within their contracts. See, e.g., Greenlee v. Tuscaloosa Office Products & Supply, Inc., 474 So.2d 669 (Ala.1985); Hoppe v. Preferred Risk Mutual Insurance Co., 470 So.2d 1161 (Ala.1985); Gafnea v. Pasquale Food Co., 454 So.2d 1366 (Ala.1984); Files v. Schaible, 445 So.2d 257 (Ala.1984); James S. Kemper & Company Southeast, Inc. v. Cox & Associates, Inc., 434 So.2d 1380 (Ala.1983); Famex, Inc. v. Century Insurance Services, Inc., 425 So.2d 1053 (Ala.1982); Reed v. Herren, 423 So.2d 139 (Ala.1982). Such cases suggest that the reach of this statute extends only to the parties to restrictive contracts and not to non-parties such as Tomlinson.
The general theme of the statute suggests that it is directed only toward that contract by which a party gives up his right to earn a living; this case does not involve such a contract.